Brenna E. Erlbaum (SBN: 296390)
**HEIT ERLBAUM, LLP**
501-I South Reino Rd #344
Newbury Park, CA 91320
[phone]: (805) 231.9798
Brenna.Erlbaum@HElaw.attorney

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### San Francisco

| | |
|---|---|
| MALIBU MEDIA, LLC, | Case Number: 3:15-cv-04443-WHA |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| vs. | |
| [REDACTED], | |
| Defendant. | |

Plaintiff, Malibu Media, LLC ("Plaintiff"), by and through undersigned counsel, files the instant response to Defendant [REDACTED] ("Defendant") Motion to Quash and Dismiss [CM/ECF 22].

## I.  INTRODUCTION

Although Defendant has long since been aware of this lawsuit and has for months been represented by an attorney, his attorney refused to accept process on Defendant's behalf or help Plaintiff and its process servers locate Defendant, and Defendant evaded (intentionally or coincidentally) service of process the first several times Plaintiff's process server attempted to serve him. Defendant was finally successfully served with process on Sunday, February 7, 2016 (*i.e.*, within approximately one month—merely thirty days—of Plaintiff's learning Defendant's identity). Since Plaintiff had not sought an extension of its Saturday, February 6, 2016 service deadline, Defendant, noting that he was served one day late, now asks the Court to

quash service and dismiss this lawsuit. Plaintiff apologizes to the Court and to Defendant for its very brief delay in successfully serving Defendant and notes that while the Court has the discretion to grant Defendant's requested relief, such an order would serve no legitimate purpose and would frustrate the policies behind the Federal Rules. For these reasons, as further explained below, Plaintiff respectfully requests that the Court deny Defendant's Motion in full. Alternatively, to the extent the Court is inclined to quash service, Plaintiff respectfully requests that the Court allow Plaintiff a brief period of time to simply re-serve Defendant (who has long since known about this litigation and has long since been represented by counsel) rather than needlessly starting the litigation anew.

**II.   FACTS**

1.   Plaintiff commenced this action on September 27, 2015, at which time it filed a complaint alleging that Defendant, the Doe subscriber assigned Internet Protocol ("IP") address 98.210.99.78, utilized his wireless internet and a BitTorrent protocol to copy and distribute forty two (42) of Plaintiff's copyrighted works, all without Plaintiff's consent. *See* CM/ECF 1.

2.   On November 8, 2015, Plaintiff was granted leave to serve a third party subpoena on Comcast Cable, Defendant's Internet Service Provider, to obtain Defendant's identifying information. *See* CM/ECF 11. Plaintiff issued the subpoena on or about November 10, 2015, and received the ISP's response on January 6, 2016.

3.   In December 2015, prior to Plaintiff's learning Defendant's identity but after Defendant learned of this lawsuit, Defendant retained Nicholas Ranallo, Esq. ("Defense Counsel"), who emailed undersigned on or about December 23, 2015 to advise of the representation. Undersigned promptly confirmed Defense Counsel's representation in writing, inquired about Defendant's position in the litigation and extended an opening settlement offer.

4. After no follow-up from Defense Counsel, undersigned again contacted Defense Counsel via e-mail on January 5, 2016, again asking Defense Counsel about Defendant's position in the litigation and extending an opening settlement offer.

5. Defense Counsel again ignored undersigned's inquiries and on January 6, 2016 Plaintiff's Counsel learned of Defendant's identity from Comcast Cable. After investigating its claims, Plaintiff confirmed its suspected good faith basis for believing Defendant liable and so advised Defense Counsel on a couple occasions, each time asking Defense Counsel: "Do you still represent the subscriber in this case, and if so, are you authorized to accept service?"

6. On January 21, 2016, Defense Counsel finally responded, advising: "Hi Brenna – I do represent the subscriber, but do not yet have authorization to make a counter-offer or accept service. I will follow up with him and double-check, but that's where we are at for now."

7. The next day Plaintiff filed its Amended Complaint on the docket under seal, asking the Court to accept same as an authorized filing. *See* CM/ECF 15. This Court then entered an Order on January 26, 2016, accepting the sealed Amended Complaint, and directing Plaintiff to serve Defendant on or before February 6, 2016. *See* CM/ECF 17.

8. Although Defense Counsel had represented that he would confer with Defendant and advise Plaintiff whether he would accept service of process, Defense Counsel never did so. Accordingly, undersigned began preparations to have the Amended Complaint and Summons served personally on Defendant, processing the necessary documentation on or about Friday, January 29, 2016.

9. Plaintiff's process servers, under instruction to expedite service, began diligent attempts to serve Defendant the first week of February, but Plaintiff's process servers' initial efforts were unsuccessful since there was no answer at the door of Defendant's home and no

vehicles present. On February 5, 2016, Plaintiff's process server was able to speak with Defendant's wife, who advised that Defendant was not home. Since Plaintiff had asked its process servers to strive for direct personal service on Defendant rather than substitute service (to avoid service issues), Plaintiff's process servers simply advised Defendant's wife the purpose of the visit, and asked for a better time to locate Defendant. Unfortunately, the next few visits fared no better – the next few times Plaintiff's process servers visited Defendant's home, there were either no cars in the driveway and lights off or no answer at the door albeit the presence of vehicles and illuminated interior lights. Finally, Plaintiff's process servers successfully served Defendant on Sunday, February 7, 2016. Since the service occurred over the weekend, Plaintiff did not realize that service had been untimely effectuated on Sunday rather than timely on Saturday until Monday, February 8, 2016. Plaintiff sincerely apologizes for its one-day delay in successfully serving Defendant.[1]

## III. ARGUMENT

Although Defendant has been aware of this litigation since mid-December of 2015 and had retained counsel at that time, he argues that he is entitled to dismissal of this action because he did not authorize his attorney to accept service of process and Plaintiff was unable to locate and serve him until a day after its 4(m) deadline. Although Plaintiff acknowledges that deadlines serve an important function, it submits that, under the circumstances at bar, quashing service or dismissing this action would serve no legitimate purpose and would only reward Defendant for making it difficult for Plaintiff to timely serve him. "California courts liberally construe statutes governing service of process and hold that service that is technically deficient will be deemed effective if defendant has actual notice of the pendency of the action." *Tejada*

---

[1] Should the Court deem necessary, Plaintiff can obtain an affidavit from its process servers detailing these service issues.

*v. Sugar Foods Corp.*, No. CV 10-05186, 2010 WL 4256242, at *5 (C.D. Cal. Oct. 18, 2010); *see also Team Enters., LLC v. W. Inv. Real Estate Trust*, No. CV F 08-1050, 2008 WL 4367560, at *3 (E.D. Cal. Sept. 23, 2008) ("[California's] statutory requirements are construed to uphold jurisdiction, rather than defeat it. As long as the defendant receives actual notice of the lawsuit, substantial compliance with … service of summons will generally be held sufficient."). This is sound policy and is consistent with the rationale of Rule 4, which is not intended to create "unnecessary technicality in connection with service of process," but is instead "designed to provide maximum freedom and flexibility in the procedures for giving all defendants notice of commencement of the action…." *Elec. Specialty Co. v. Road & Ranch Supply, Inc.*, 967 F.2d 309, 314 (9th Cir. 1992) (citing 4 C Wright & A. Miller, *Federal Practice and Procedure § 1061*, at 216 (2d ed. 1987)). Further, the deadlines established by Rule 4 are, like all other procedural rules, intended to "be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

Here, granting Defendant's requested quashing or dismissal would thus frustrate the Federal Rules, as it would unnecessarily prolong resolution of this lawsuit (of which Defendant and his attorney have been aware for four and a half months) by needlessly requiring Plaintiff to either re-serve Defendant or otherwise re-file its complaint against him. And, the analysis should not be altered by Defense Counsel's observation that Plaintiff's process servers Affidavit of Service included a scrivener's error since it refers to the time of service as "4:23 AM" instead of "4:23 PM." First, the scrivener's error neither undermines the foregoing policy rationales behind the rules regarding service nor the fact that Defendant has been aware of this action and has had notice of Plaintiff's pleadings for months. Second, Plaintiff has confirmed the scrivener's error with its process server and will supplement the record with a corrected

5

Affidavit of Service to address the typographical error. To the extent the Court disagrees that this is sufficient, the Court may—and should—direct Plaintiff to re-serve Defendant, rather than dismiss this action. If it "appears that effective service can be made and there is no unfair prejudice to the defendant, quashing service rather than dismissing the action, and leaving the plaintiff free to effect proper service, is the appropriate course." *E.g., Dillard v. Red Canoe Fed. Credit Union*, No. C14-1782JLR, 2015 WL 1782083, at *3 (W.D. Wash. April 17, 2015) (citing *Umbenhauer v. Woog,* 969 F.2d 25, 30 (3d Cir.1992)). "Indeed, the simplest solution … is to quash process and allow the plaintiff another opportunity to serve the defendant." *Id.* (citing 5B Charles Alan Wright & Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, *Federal Practice & Procedure: Civil § 1354* (3d ed.2002)).

Defendant's attempt to alter the foregoing analysis by claiming that Plaintiff would not have had good cause to extend its 4(m) deadline is unavailing. First, Plaintiff submits that it would have had good cause. As explained in the fact section above, Plaintiff had diligently communicated and sought to confirm with Defense Counsel whether he would accept service on Defendant's behalf. When Defendant failed to confirm this issue with Plaintiff, Plaintiff proactively delivered the Summons to its process server, who quickly began attempts to serve Defendant. Despite Plaintiff and its process server's diligence, Defendant was unable to be located for several days, and was only finally serve one day after Plaintiff's 4(m) deadline. Plaintiff maintains that this Court would have appreciated these circumstances and would have found good cause to extend Plaintiff's 4(m) deadline. Second, Defendant's good cause argument fails because this Court has the discretion to extend Plaintiff's 4(m) deadline and/or accept as timely Plaintiff's one-day delayed service of process even without good cause. To be sure, binding precedent is clear that "Rule 4(m) does not tie the hands of the district court after

the [4(m)] period has expired. Rather, Rule 4(m) explicitly permits a district court to grant an extension of time to serve the complaint *after* that … period." *Mann v. Am. Airlines*, 324 F.3d 1088, 1090 (9th Cir. 2003). *Cf. Henderson v. U.S.*, 517 U.S. 654, 661 (1996) (concluding that "the 120-day provision operates not as an outer limit subject to reduction, but as an irreducible allowance.").

Defendant's final argument—that Plaintiff never filed its Amended Complaint on the docket and that "for this reason alone, Plaintiff's complaint should be dismissed"—also fails. Plaintiff's Amended Complaint was filed on January 22, 2016, and this Court entered an Order accepting the filing and instructing Plaintiff to proceed to effectuate service. *See* CM/ECF 15, 16. Assuming *arguendo* that the Court wishes Plaintiff to supplement the record with an unsealed but redacted version of its Amended Complaint, Plaintiff can certainly do so upon request. Since Plaintiff's Amended Complaint has been filed under seal on the docket and accepted by this Court, however, Plaintiff's failure to file a second version of its pleading in redacted form cannot serve a basis for dismissal. Defendant's citation to *Alvarez v. Rainbow Textiles, Inc.*, 168 F.R.D. 201 (S.D. Tex. 1996) does not hold otherwise. *Alvarez* involved the wholesale failure to file a pleading on a docket, not the failure to file two versions of a pleading—one under seal and one redacted. Moreover, the Court in *Alvarez* did not dismiss the lawsuit, but merely declined to impose a default and instead "directed [the parties] to confer and file a plan for bringing this case to a conclusion." *Alvarez*, 168 F.R.D. at 203.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court either deny Defendant's Motion in full or otherwise grant it only in part by quashing service and allowing Plaintiff a fair opportunity to re-serve Defendant so that it may justly, speedily, and

inexpensively resolve this dispute.

Dated: March 14, 2016.

HEIT ERLBAUM, LLP

/s/ Brenna Erlbaum
BRENNA ERLBAUM, ESQ

### CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

*/s/ Brenna Erlbaum*